UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW FREE,<br><br>　　　　　*Plaintiff*,<br>　　v.<br><br>DEPARTMENT OF JUSTICE,<br><br>　　　　　*Defendant*. | Civil Action No. 26-0876 (RDM) |

## __JOINT STATUS REPORT__

Plaintiff Andrew Free ("Plaintiff") and Defendant Department of Justice ("Defendant" or "DOJ"), through undersigned counsel, provide the Court with this Joint Status Report in this action brought under the Freedom of Information Act ("FOIA"). In this action, Plaintiff seeks records that DOJ (through its component, Justice Management Division, "JMD") withheld citing FOIA Exemptions 6 and 7(c).[1]

### Background

JMD granted the request in part, but withheld under Exemptions 6 and 7(c) "information that could identify an individual directly or indirectly: [1] name, [2] date of birth, [3] last four digits of social security number, [4] hash of social security number and date of birth, [5] day and month of incident, [6] job series, [7] subdivision, [8] employee unique identification number, [9] identification of user that updated the record, [10] flag type detail, and [11] employing agency or subagency when the individual's agency or subagency has fewer than 50 records in NLEAD" (ECF No. 1-8 at 1, brackets added for easier referencing). Plaintiff has narrowed his request to the

---

[1]　　The underlying FOIA request is FOIA-2024-00549, tracking number 133352 (appealed as A-2025-00621), which seeks records from the National Law Enforcement Accountability Database ("NLEAD").

following withheld categories: [1] name, [5] day and month of incident, [6] job series, [7] subdivision, [10] flag type detail, and [11] employing agency or subagency when the individual's agency or subagency has fewer than 50 records in NLEAD. Plaintiff seeks these records for a total of 5,185 records pertaining to LEOs.

Plaintiff proposed additional narrowing in July, which is discussed in Plaintiff's section of this Status Report, below.

### Plaintiff's Position

A.    Plaintiff's March Conferral Letter and July Narrowing Proposal

Together with service of the instant lawsuit, Plaintiff sent a detailed conferral letter in March 2026 to Defendant. In that conferral letter, supported with ample legal authority, Plaintiff outlined his position that the agency's blanket withholdings under Exemptions 6 and 7(C) violated its obligations under FOIA. On July 13, 2026, Plaintiff offered to further narrow the scope of his request to include only: (1) NLEAD database entries for LEOs who (a) have been convicted of crimes, (b) were terminated for serious misconduct, or (c) resigned or retired while under investigation for serious misconduct (2) who worked for the (a) Bureau of Prisons (BOP), (a) U.S. Immigration and Customs Enforcement (ICE), and (c) U.S. Customs and Border Protection. This proposal would have reduced the universe of responsive records from 5,185 database entries to just 1,142 entries–nearly 80%.

Table 1: Database Entries Responsive to Plaintiff's July Narrowing Proposal

| Agency / Category | Criminal Conviction | Termination | Resigned or Retired | Total Entries |
|---|---|---|---|---|
| BOP | 198 | 206 | 74 | 478 |
| ICE | 17 | 25 | 45 | 87 |
| CBP | 14 | 366 | 197 | 577 |

| Total Entries | 229 | 597 | 316 | **1142** |
| --- | --- | --- | --- | --- |

This proposal would have drastically limited the number of agencies with which DOJ needs to confer about "equities" from the original universe of all federal law enforcement agencies with personnel listed in NLEAD (over a dozen) down to just three. DOJ rejected this proposal. Plaintiff therefore continues to seek the narrowed categories of records described in the Background section above for all 5,185 database entries.

B. The Court Should Expeditiously Review the Agency's Blanket Withholding of Narrowed Database Entries

The agency's current, blanket withholding of all narrowed database entries for LEOS–even criminally convicted ones–requires expeditious review because it is irreconcilable with binding precedent and serves only as a delay tactic. As Plaintiff explained in the March conferral letter, binding circuit precedent forecloses blanket withholding of these records under Exemptions 6 and 7(C). *Hum. Rts Def. Ctr v. U.S. Park Police*, 126 F.4th 708, 713 (D.C. Cir. 2025) (requiring individualized, two-step balancing analysis irreconcilable with blanket withholding) (*quoting Niskanan Ctr v. FERC*, 20 F. 4th 787, 791 (D.C. Cir. 2021)). The D.C. Circuit previously rejected an attempt by the Department of Justice to withhold criminal conviction records of federal officers. *American Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1, 17 (D.C. Cir. 2011). Disciplinary records of federal LEOs are similarly releasable notwithstanding FOIA's privacy exemptions. *Stern v. FBI*, 737 F.3d 84, 92 (D.C. Cir. 1984).

DOJ has yet to provide any countervailing authority on which it claims it has the power to withhold these records. Nearly five months ago, Plaintiff requested that the government either defend its blanket withholdings immediately in light of their apparent conflict with binding circuit authority,or agree to a production schedule. DOJ has done neither. Instead, the government has used the conferral process as a stalling mechanism. Now the government proposes to kick the can

3

down the road yet again, buying itself another two months to produce a *Vaughn* index, with no set briefing schedule, or, in the alternative, a 35-day *Vaughn* index deadline, followed by a briefing schedule that will not close until no earlier than February 2027–nearly a year after Plaintiff filed this action and more than three years after he filed his FOIA request.

If the government has a good-faith basis other than delay for defending its wholesale withholding of the remaining records, it should offer that position to Plaintiff and the Court without further delay. If the government believes foreseeable harm will likely occur from disclosing database entries for federal LEOs who were convicted of crimes–many on publicly available dockets–a competent agency official should make that case now, under oath–not three months (or more) from now. At present, the government contends short-staffing and scheduled leave warrant the delay. But the Justice Management Division's FOIA staffing is higher than it has ever been, according to the most recent available federal data–up to 4.85 full-time staff in Fiscal Year 2025 from just 2 in FY 2023. JMD has only 84 FOIA requests in its backlog (down from 139 in FY23). And has not experienced an unexpected increase in FOIA requests, according to DOJ's data.

"Public awareness of the government's actions is a structural necessity in a real democracy." *Am. Oversight v. United States Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) (quoting *Nat'l Archives & Recs. Admin v. Favish*, 541 U.S. 147, 172 (2004)). "*Timely* awareness is equally necessary because 'stale information is of little value'" *Id.* at 186 (emphasis in original) (quoting *Payne Enters. v. United States*, 837 F.3d 486, 494 (D.C. Cir. 1998)). For this reason, FOIA's statutory text requires agencies to make records "promptly available," 5 U.S.C. § 552(a)(3)(A), and empowers requestors to seek judicial review and an order compelling timely release of improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). This remedy only works

to ensure timely access to records of the government's actions–a 'structural necessity in a real democracy'—if judicial review is timely as well.

The agency's complaint that it will not have enough time to prepare and obtain supervisory approval for a declaration highlights how little it has done in the time since Plaintiff initiated this action. The agency's position today is no different than it was in September 2025 when it finally decided Plaintiff's administrative appeal (*See* ECF No. 1 ¶¶ 51-59) and no different than it was when it filed its Answer. Its request for additional time demonstrates that the agency's view of the records has changed very little, if at all, from September 2025 to the present. Despite clearly believing it had justifications for withholding the remaining records, it is only now considering mustering a defense to the position it has held since at least September 2025—a task that could and should have been completed simultaneously during the parties' conferrals over the past four months, unless those negotiations were simply a tactic to buy additional time.

As indicated in the parties' prior Joint Status Report, Plaintiff therefore requests that the Court set a briefing schedule on cross-motions for summary judgment aimed at closing the briefing before the end of this year. Plaintiff proposes the Department's initial motion papers should be filed no later than **September 1, 2026**; Plaintiff's Cross-Motion for Summary Judgment and consolidated Response in Opposition should be filed no later than **September 30, 2026**; the Department's Reply and Response should be filed no later than **October 21, 2026**; and Plaintiff's Reply should be filed no later than **November 4, 2026**.

**Defendant's Position**

In the previous Status Report, JMD requested additional time to carefully evaluate the request before proceeding, in order to determine if further productions were appropriate.

5

After review and consultation, JMD believes that its withholdings were proper, and that further productions in response to the Plaintiff's FOIA Request are inappropriate as all unproduced records fall into FOIA Exemptions 6 and 7(c).

JMD intends to support its withholdings via a declaration and, if appropriate, a *Vaughn* index. To narrow or eliminate areas of dispute that require litigation, JMD offers to produce a draft declaration for Plaintiff's review and to produce that to Plaintiff within 60 days, on or by October 5, 2026. JMD believes that this is the minimum time in which it can guarantee an appropriate product, due to limited staffing, scheduled leave, and the need for supervisory review.

If the Court is inclined to set a briefing schedule now, JMD respectfully requests 35 days the production of the *Vaughn* index to prepare its Motion for Summary Judgment and supporting declaration, and proposes the following:

1. Defendant's motion for summary judgment shall be due on or by November 12, 2026.

2. Plaintiff's Cross-Motion for Summary Judgment and Opposition shall be due on or by December 14, 2026.

3. Defendant's Reply and Opposition shall be due on or by January 14, 2027.

4. Plaintiff's Reply shall be due on or by February 12, 2027.

Recognizing that some of this briefing falls around major holidays, Defendant would be prepared to accommodate Plaintiff with extensions should they be necessary.

Defendant respectfully requests that the Court reject the Plaintiff's proposed schedule, which would permit less than 30 days for Defendant to prepare a motion for summary judgment and supporting documentation. This is not feasible – under the best of circumstances, government agencies often require (and are granted) 60 days to prepare a declaration. Some agencies routinely request as much as 90 days. As noted above, JMD's proposed schedule reflects the reality of JMD's

6

staffing at present. Requiring JMD to submit a motion for summary judgment and supporting documents to the Court faster than JMD is able to produce appropriate filings does not serve the interests of justice, or ultimately of any party.

JMD disputes the characterization that it is now, or has been, "stalling" this litigation – JMD has been proceeding with diligence, including reviewing withholdings and consulting internally in order to confirm its position that the withholdings are appropriate. Had those consultations reached different conclusions, JMD would be preparing to make productions now; this time was not wasted, it was a reasonable and prudent investigation of whether productions could be made.

*     *     *

7

Dated: August 4, 2026

Respectfully submitted,

*/s/ Daniel Melo*
DANIEL MELO
The Melo Law Firm
2920 Forestville Road
Ste 100, PMB 1192
Raleigh, NC 27616
(919) 348-9213
dan@themelolawfirm.com

*Attorney for Plaintiff*

_____

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Samuel G. Settle*
SAMUEL G. SETTLE
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7705
samuel.settle@usdoj.gov

*Attorneys for the United States of America*