UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW FREE,

*Plaintiff*,

v.

DEPARTMENT OF JUSTICE,

*Defendant*.

Civil Action No. 26-0876 (RDM)

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 2

Legal Standards ..... 3

I. Summary Judgment ..... 3

II. Exemption 6 ..... 4

III. Exemption 7 ..... 6

Argument ..... 10

I. JMD Conducted An Adequate Search ..... 10

II. JMD Properly Redacted Direct and Secondary Identifying Fields Pursuant to Exemptions 6 and 7(C). ..... 11

A. FOIA Exemptions 6 and 7(C) Generally and the *SafeCard* Categorical Rule. ..... 11

B. The NLEAD Dataset Was Compiled for Law Enforcement Purposes. ..... 13

C. JMD Properly Redacted Direct and Secondary Identifying Fields Under Exemptions 6 and 7(C). ..... 14

III. JMD Satisfied the Foreseeable Harm Requirement of 5 U.S.C. § 552(a)(8)(A). ..... 17

IV. JMD Has Released All Reasonably Segregable Non-Exempt Information ..... 17

Conclusion ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Dep't of Just.*,
655 F.3d 1, (D.C. Cir. 2011) .......... 8, 9
*Admin v. Favish*,
541 U.S. 157 (2004) .......... passim
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 3
*Baker & Hostetler LLP v. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006) .......... 10
*Bartholdi Cable Co. v. FCC*,
114 F.3d 274 (D.C. Cir. 1997) .......... 6
*Bast v. Dep't of Just.*,
665 F.2d 1251 (D.C. Cir. 1981) .......... 8
*Beck v. Dep't of Just.*,
997 F.2d 1489 (D.C. Cir. 1993) .......... 6, 15
*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) .......... 7
*Blanton v. Dep't of Just.*,
63 F. Supp. 2d 35 (D.D.C. 1999) .......... 8, 14
*Braga v. FBI*,
910 F. Supp. 2d 258 (D.D.C. 2012) .......... 9
*Brown v. Dep't of Just.,*
742 F. Supp. 2d 126 (D.D.C. 2010) .......... 4
*Campbell v. Dep't of Just.*,
164 F.3d 20 (D.C. Cir. 1998) .......... 13
*Carter v. Dep't of Commerce*,
830 F.2d 388 (D.C. Cir. 1987) .......... 11
*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 3
*Ctr. for Pub. Integrity v. Dep't of Energy*,
234 F. Supp. 3d 65 (D.D.C. 2017) .......... 6
*Davis v. Dep't of Just.*,
968 F.2d 1276 (D.C. Cir. 1992) .......... 8, 11, 14
*Dep't of Just. v. Reps. Comm.*,
489 U.S. 749 (1989) .......... passim
*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) .......... 4, 11
*Ezeah v. FBI*, Civ. A.,
No. 24-0076 (TNM), 2025 U.S. Dist. LEXIS 158961 (D.D.C. Aug. 15, 2025) .......... 17
*Hopkins v. HUD*,
929 F.2d 81 (2d Cir. 1991) .......... 11

*Horowitz v. Peace Corps*,
428 F.3d 271 (D.C. Cir. 2005) .......... 5
*Info. Ctr. v. Dep't of Just.*,
18 F.4th 712 (D.C. Cir. 2021) .......... 5, 7
*Jefferson v. Dep't of Just.*,
284 F.3d 172 (D.C. Cir. 2002) .......... 13
*John Doe Agency v. Jon Doe Corp.*,
493 U.S. 146 (1989) .......... 7
*Juarez v. Dep't of Just.*,
518 F.3d 54 (D.C. Cir. 2008) .......... 18
*Kendrick v. FBI*, Civ. A.,
No. 20-2900 (TNM), 2022 U.S. Dist. LEXIS 175454 (D.D.C. Sept. 28, 2022) .......... 17
*Kimberlin v. Dep't of Just.*,
139 F.3d 944 (D.C. Cir. 1998) .......... 15
*Kowal v. Dept. of Just.*,
107 F. 4th 1018 (D.C. Cir. 2024) .......... 15
*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009) .......... 3
*Lepelletier v. FDIC*,
164 F.3d 37 (D.C. Cir. 1999) .......... 5, 7
*Levinthal v. FEC*,
219 F. Supp. 3d 1 (D.D.C. 2016) .......... 13
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .......... 3
*McCutchen v. Dep't of Health & Hum. Servs.*,
30 F.3d 183 (D.C. Cir. 1994) .......... 11
*Miller v. Casey*,
730 F.2d 773 (D.C. Cir. 1984) .......... 3
*Milner v. Dep't of Navy*,
562 U.S. 562 (2011) .......... 7
*Milton v. Dep't of Just.*,
783 F. Supp. 2d 55 (D.D.C. 2011) .......... 4
*Multi Ag Media LLC v. Dep't of Agric.*,
515 F.3d 1224 (D.C. Cir. 2008) .......... 4
*N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*,
920 F.2d 1002 (D.C. Cir. 1990) .......... 4, 11
*Nation Mag. v. U.S. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995) .......... 14
*Nat'l Ass'n of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) .......... 5
*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) .......... 4, 5, 6
*People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*,
745 F.3d 535 (D.C. Cir. 2014) .......... 10, 12
*Perrone v. FBI*,
908 F. Supp. 24 (D.D.C. 1995) .......... 8

*Prison Legal News v. Samuels*,
787 F.3d 1142 (D.C. Cir. 2015) .......... 9, 12
*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S-Mex.*,
740 F.3d 195 (D.C. Cir. 2014) .......... 7
*Ripskis v. Dep't of Hous. & Urb. Dev.*,
746 F.2d 1 (D.C. Cir. 1984) .......... 5
*Rosenberg v. Dep't of Def.*,
342 F. Supp. 3d 62 (D.D.C. 2018) .......... 16
*Roth v. Dep't of Just.*,
642 F.3d 1161 (D.C. Cir. 2011) .......... 13, 14
*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1997) .......... 8, 9, 12, 14
*Sea Shepherd Conservation Soc'y v. IRS*,
208 F. Supp. 3d 58 (D.D.C. 2016) .......... 13
*Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*,
502 F. Supp. 2d 50 (D.D.C. 2007) .......... 11
*Senate of P.R. v. Dep't of Just.*,
823 F.2d 574 (D.C. Cir. 1987) .......... 8
*Shurtleff v. EPA*,
991 F. Supp. 2d 1 (D.D.C. 2013) .......... 6, 16
*Spirko v. U.S. Postal Serv.*,
147 F.3d 992 (D.C. Cir. 1998) .......... 14
*Steinberg v. Dep't of Just.*,
23 F.3d 548 (D.C. Cir. 1994) .......... 3
*Stern v. FBI*,
737 F.2d 84 (D.C. Cir. 1984) .......... 6
*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) .......... 17
*Tao v. Freeh*,
27 F.3d 635 (D.C. Cir. 1994) .......... 3
*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) .......... 10
*Voinche v. FBI*,
46 F. Supp. 2d 26 (D.D.C. 1999) .......... 14
*Weisberg v. Dep't of Just.*,
705 F.2d 1344 (D.C. Cir. 1983) .......... 10

**Statutes**

5 U.S.C. § 552(a)(8)(A) .......... i, 1, 16
5 U.S.C. § 552(b) .......... 17
5 U.S.C. § 552(b)(6) .......... 4, 10, 12
5 U.S.C. § 552(b)(7) .......... 6, 12
5 U.S.C. § 552(b)(7)(C) .......... 7, 8

**Rules**

Fed. R. Civ. P. 56(a) .......... 3

**Other Authorities**

Executive Order 14074 .......... 13

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant United States Department of Justice (the "Department") respectfully moves the Court for an order granting summary judgment in its favor in this Freedom of Information Act ("FOIA") action, in which Plaintiff seeks records from the Department's component, the Justice Management Division ("JMD").

Plaintiff Andrew Free seeks the contents of the National Law Enforcement Accountability Database ("NLEAD"), a centralized federal pointer database containing entries documenting instances of law enforcement officer misconduct and commendations across 94 federal reporting agencies. As explained below, JMD conducted a comprehensive search by performing a 100% extraction of the database and released all non-identifying aggregate data, statistical codes, and macro-level entry counts. However, JMD properly redacted primary and secondary identifying data fields—including law enforcement officer names, job series, subdivisions, specific event dates, and agency listings for entities with fewer than 50 database entries—under FOIA Exemptions 6 and 7(C). Disclosing the individual identities associated with these uncontextualized database entries would result in an unwarranted invasion of personal privacy as it is well settled that third parties, including current and former law enforcement officers, maintain substantial privacy interests in personnel disciplinary records. As a result, JMD properly asserted categorical withholdings based on FOIA Exemptions 6 and 7(C).

Furthermore, JMD evaluated the foreseeable harm resulting from disclosure pursuant to 5 U.S.C. § 552(a)(8)(A) and determined that releasing names, job series, or small-agency identifiers creates a real-world risk of harassment, doxxing, physical endangerment, and severe public stigmatization. Finally, JMD conducted a field-by-field segregability review and released all non-

exempt information, withholding only data inextricably intertwined with protected identifying details. Accordingly, Defendant is entitled to summary judgment as a matter of law.

**BACKGROUND**

Defendant respectfully refers the Court to its accompanying Local Civil Rule 7(h) Statement of Material Facts As to Which There is No Genuine Dispute and otherwise provides the following background information.

On December 19, 2023, Plaintiff submitted a FOIA request to the Department's Office of Information Policy ("OIP") seeking the contents of the National Law Enforcement Accountability Database (the "FOIA Request"). Declaration of Laurence N. Brewer ¶ 14 ("Brewer Decl."). On or about February 22, 2024, OIP forwarded Plaintiff's request to JMD for processing. Brewer Decl. ¶ 15.

Following receipt of Plaintiff's request, JMD personnel coordinated with technical administrators to perform an electronic extraction and query of the master NLEAD data tables containing all active agency-reported entries as of November 5, 2024, encompassing 100% of the responsive records held in NLEAD. Brewer Decl. ¶ 16. On December 18, 2024, JMD issued its final response providing Plaintiff with the contents of the NLEAD dataset, with identifying data fields redacted pursuant to FOIA Exemptions 6 and 7(C). Brewer Decl. ¶ 34.

In support of its motion for summary judgment, Defendant has submitted the declaration of Laurence N. Brewer, Director of the Office of Executive Records and Information Management ("ERIM"), establishing that JMD conducted an adequate search, properly applied Exemptions 6 and 7(C) to withhold direct and indirect identifying information, satisfied the statutory foreseeable harm requirement, and released all reasonably segregable non-exempt information. Brewer Decl. ¶¶ 1–36.

## LEGAL STANDARDS

### I. <u>Summary Judgment</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Id.* Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of his pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of his position. *Id.* Thus, summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id*. When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requester, that there is no genuine issue of material fact as to the agency's compliance with FOIA. *Steinberg v. Dep't of Just*., 23 F.3d 548, 551 (D.C. Cir. 1994). The court may award summary judgment based solely upon the information provided in affidavits or declarations when those affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail… and are not controverted by either contrary evidence in the record, nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (*quoting Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). A plaintiff "cannot rebut

the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.,* 742 F. Supp. 2d 126, 129 (D.D.C. 2010).

## II. **Exemption 6**

Exemption 6 protects information about individuals in "personnel and medical files and similar files" the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). However, the decision to withhold information under this exemption does not "turn upon the label of the file which contains the damaging information." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982). All information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. *See id.* at 602; *see also Dep't of Just. v. Reps. Comm.*, 489 U.S. 749, 763 (1989) (holding that the concept of privacy not only encompasses that which is inherently private but includes "the individual's control of information concerning his or her person"). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Private information need only implicate a "significant privacy interest" to trigger protection. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008). This standard, however, "means less than it might seem," as a significant privacy interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30 (citing *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989); *see also Dep't of Just. v. Reps. Comm.*, 489 U.S. at 763–65 (explaining that the privacy interest at stake belongs to the individual rather than the government agency).

To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy protected by Exemption 6, courts first look to "whether disclosure 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (citation omitted); *see also Horner*, 879 F.2d at 874 ("[I]f no significant privacy interest is implicated . . . FOIA demands disclosure."). Conversely, when the court finds there is a substantial privacy interest at stake, it must "balance the . . . privacy interest against public interest in disclosure." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 18 F.4th 712, 718 (D.C. Cir. 2021) (alteration in original) (quoting *Nat'l Archives & Recs. Admin v. Favish*, 541 U.S. 157, 171 (2004)). Congress constructed Exemption 6 to "require a balancing of the individual's right to privacy against the preservation of the basic purpose of the [FOIA]." *Ripskis v. Dep't of Hous. & Urb. Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984). Accordingly, courts must weigh the "privacy interests in disclosure against the public interest in the release of the records to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *See Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Horner*, 879 F.2d at 874); *see also Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("[W]e must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the [FOIA],' which is 'to open agency action to the light of public scrutiny').") (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372-73 (1976)).

"The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contributing significantly to public understanding of the operations or activities of the government." *Nat'l Ass'n of Home Builders*, 309 F.3d at 33 (internal quotation marks and citations omitted). "The only relevant public

interest in disclosure to be weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997) (cleaned up). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose [of the FOIA]; thus; the public has no cognizable interest in the release of such information." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1893 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm.*, 489 U.S. at 773); *see also Horner*, 879 F.2d at 879) ("[S]omething, even a modest privacy interest, outweighs nothing every time.")

The seniority of the employees whose privacy is at issue is highly relevant to this analysis. *Stern v. FBI*, 737 F.2d 84, 94 (D.C. Cir. 1984) ("There is a decided difference between knowing participation by a high-level officer in such deception and the negligent performance of particular duties by the two other lower-level employees."); *Ctr. for Pub. Integrity v. Dep't of Energy*, 234 F. Supp. 3d 65, 80 (D.D.C. 2017) (noting that "the public interest level varies depending on the individual government employee involved in the wrongdoing and therefore the agency must make an individualized assessment of the public interest as to each employee," and observing that one of the factors courts must consider in weighing the public interest is the seniority of the employee); *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18–19 (D.D.C. 2013) (protecting work email addresses of the EPA Administrator and personnel in the Executive Office of the President due to the significant privacy interest of those individuals in avoiding harassment and unsolicited emails).

## III. <u>Exemption 7</u>

Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of that Exemption. *See* 5 U.S.C. § 552(b)(7). To justify any withholding pursuant to Exemption 7, an agency must make a threshold showing that the

records at issue were "compiled for law enforcement purposes." *Id.*; *see also FBI v. Abramson*, 456 U.S. 615, 624 (1982) (explaining that the "threshold requirement for qualifying under Exemption 7 turns on the purpose for which the document sought to be withheld was prepared"); *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) ("[T]he agency need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.") (cleaned up).

"[T]he term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing *John Doe Agency v. Jon Doe Corp.*, 493 U.S. 146, 155 (1989)). "The ordinary understanding of law enforcement includes . . . proactive steps designed to prevent criminal activity and to maintain security." *Milner v. Dep't of Navy*, 562 U.S. 562, 583 (2011) (Alito, J., concurring).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Similar to Exemption 6, withholding under Exemption 7(C) requires agencies to balance individuals' privacy interests against the public's interest in disclosure. *See Elec. Priv. Info Ctr.*, 18 F.4th at 718. When assessing the applicability of Exemption 7(C), courts weight "the privacy interests in disclosure against the public interest in the release of the records to determine whether, on balance, the disclosure would work a clearly

unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46 (quoting *Horner*, 879 F.2d at 974).

Once the agency has demonstrated records were compiled for law enforcement purposes, the Court must next consider whether the release of the information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *Bast v. Dep't of Just.*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) ("Unlike exemption 6, which permits nondisclosure only when a document portends a 'clearly unwarranted invasion of personal privacy,' exemption 7(C) does not require a balance tilted emphatically in favor of disclosure.") (citations omitted). Similar to Exemption 6, courts must still balance the privacy interests of the individuals against the public interest in disclosure. *See ACLU v. Dep't of Just.*, 655 F.3d 1, 6, (D.C. Cir. 2011). Plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F. Supp. 24, 26 (D.D.C. 1995) (citing *Senate of P.R. v. Dep't of Just.*, 823 F.2d 574, 588 (D.C. Cir. 1987).

"In order to trigger the balancing of public interests against private interests, a FOIA requestor must: (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Boyd v. Criminal Div. of the United States DOJ*, 475 F.3d 381, 387 (quoting *Favish*, 541 U.S. at 172). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Dep't of Just. v. Reps. Comm.*, 489 U.S. at 773). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C). *Blanton v. Dep't*

*of Just.*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1997) (explaining the public interest in disclosure of third-party identities is "insubstantial"). Furthermore, *SafeCard Servs.* held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id.* at 1206.

While a balancing test is applied to both Exemptions 6 and 7(C) withholdings, "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. Dep't of Just.*, 655 F.3d at 6); *see also Fed. Lab. Rels. Auth.*, 510 U.S. at 496 n.6 ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions."). Specifically, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two requests.'" *Braga v. FBI*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012) (quoting *Dep't of Just. v. Reps. Comm.*, 489 U.S. at 756). First, Exemption 6 "encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id.* Second Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id.* The differences in the language between the two exemptions reflect Congress's decision to provide the government with "greater flexibility in responding to FOIA requests for law enforcement records or information" than in responding to requests for personnel, medical, and other similar files. *See Dep't of Just. v. Reps. Comm.*, 489 U.S. at 777 n.22. Accordingly, if the information withheld was

"compiled for law enforcement purposes," the Court need engage only in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (quoting *Dep't of Just. v. Reps. Comm.*, 489 U.S. at 756).

## ARGUMENT

### I. <u>JMD Conducted An Adequate Search</u>

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). A FOIA search is sufficient "if the agency makes a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (citation omitted)).

There can be no genuine dispute that JMD conducted an adequate search. The request sought the contents of the NLEAD and JMD performed a 100% extraction of the database. Brewer Decl. ¶ 16. 6. No other database or record system within JMD holds the centralized NLEAD pointer data responsive to Plaintiff's request. *Id.* Accordingly, Defendant has met its burden of establishing that it conducted a reasonable and adequate search for responsive information and summary judgment should be granted in its favor on that issue.

## II. <u>JMD Properly Redacted Direct and Secondary Identifying Fields Pursuant to Exemptions 6 and 7(C).</u>

### A. FOIA Exemptions 6 and 7(C) Generally and the *SafeCard* Categorical Rule.

FOIA Exemption 6 exempts from disclosure information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted Exemption 6 broadly, making clear that the term "similar files" encompasses any "information which applies to a particular individual." *Dep't of Just. v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990).

The plaintiff bears the burden of establishing that disclosure of personal information would serve a cognizable public interest. *Carter v. Dep't of Commerce*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987). The "only relevant public interest to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (internal citation and quotation marks omitted). The "simple invocation of a legitimate public interest, however, cannot itself justify the release of personal information. Rather, a court must first ascertain whether that interest would be served by disclosure." *Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991); *see also Carter*, 830 F.2d at 391, 392 n.13; *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).

In addition, "Exemption 7(C), the law enforcement counterpart to Exemption 6, protects against the disclosure of 'records or information compiled for law enforcement purposes' to the extent that such disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 56 (D.D.C. 2007) (quoting 5 U.S.C. § 552(b)(7)(C)). "Both Exemptions 6 and 7(C) call for

a balancing of the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994); *see also Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). However, Exemption 7(C) is broader than Exemption 6. *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). "[W]hereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C)" and "whereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion." *Id.* (quoting 5 U.S.C. §§ 552(b)(6), (7)(C)).

Because Exemption 7(C) is "'more protective of privacy than Exemption 6,'" it "establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015)' *see also Fed. Lab. Rels. Auth.*, 510 U.S. at 496 n.6 ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions."). Accordingly, if the information withheld was "compiled for law enforcement purposes," the Court need engage only in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014).

Under the controlling law of this Circuit, an agency processing law enforcement records is not required to engage in an unworkable, individual re-balancing for thousands of database entries. Rather, an agency may properly apply categorical withholdings to protect the privacy of individuals appearing in law enforcement records. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). In *SafeCard*, the D.C. Circuit held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C)

is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *Id.*

**B. The NLEAD Dataset Was Compiled for Law Enforcement Purposes.**

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. Dep't of Just.*, 284 F.3d 172, 177 (D.C. Cir. 2002)). A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

The NLEAD dataset readily satisfies the Exemption 7 threshold. NLEAD was established pursuant to Executive Order 14074 as a centralized federal database designed specifically to assist agencies in vetting law enforcement personnel, evaluating background suitability, and maintaining internal discipline and law enforcement integrity across federal agencies. Brewer Decl. ¶¶ 4, 20. Records created or centralized to maintain internal law enforcement officer discipline and vet candidate suitability possess a direct rational nexus to federal law enforcement duties. *Jefferson*, 284 F.3d at 178; Brewer Decl. ¶ 20. Thus, the responsive master database tables meet the threshold requirement of Exemption 7.

### C. JMD Properly Redacted Direct and Secondary Identifying Fields Under Exemptions 6 and 7(C).

JMD properly responded to Plaintiff's FOIA request by releasing all macro-level, aggregate data fields while redacting primary and secondary identifying fields under Exemptions 6 and 7(C). Brewer Decl. ¶¶ 16, 22–30, 34–36. Because the "standard for evaluating a threatened invasion of privacy interests" under Exemption 7(C) "is somewhat broader than the standard" under Exemption 6, *Reps. Comm.*, 489 U.S. at 756, the Court does not need to evaluate the withholdings separately under Exemption 6. *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011). Any information exempt from disclosure under Exemption 7(C) would also be exempt under Exemption 6. *Id.* Accordingly, the withholdings are analyzed below under Exemption 7(C).

"In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'" *Boyd v. Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 172). Courts have construed the public interest component narrowly, noting that the public interest "must be assessed in light of FOIA's central purpose," and that purpose "is not fostered by disclosure about private individuals that is accumulated in various government files but that reveals little or nothing about an agency's conduct." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm.*, 489 U.S. at 773). Details that "'reveal little or nothing about an agency's own conduct' are not part of the public interest for purposes of Exemption 7(C)." *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282); *see also SafeCard*,

926 F.2d at 1205 (explaining that the public interest in disclosure of third-party identities is "not just less substantial, it is insubstantial"). In the absence of compelling evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche v. FBI*, 46 F. Supp. 2d 26, 33 (D.D.C. 1999).

Federal law enforcement officers and administrative personnel maintain a robust, recognized privacy interest under Exemption 7(C) in avoiding public disclosure of their names and personnel disciplinary allegations. *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993); *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998). JMD determined that officers listed in NLEAD have a substantial privacy interest in avoiding the severe public stigmatization, comment, speculation, and harassment that inevitably flows from being publicly identified in a misconduct database. Brewer Decl. ¶¶ 18, 22, 25. This privacy interest is heightened because NLEAD functions merely as a "pointer system" containing raw data attributes without underlying investigative files or contextual details. Brewer Decl. ¶¶ 6, 21, 25. Publicly branding an officer based on an uncontextualized entry creates severe, irreversible reputational harm. Brewer Decl. ¶¶ 25, 33. Moreover, even for officers with public criminal convictions, the Supreme Court has affirmed that individuals retain a protected privacy interest in "practical[ly] obscure[e]" historical records and in preventing the public linking of their law enforcement officer status with past offenses. *Reps. Comm.*, 489 U.S. at 762–64; *Kowal v. Dept. of Just*., 107 F. 4th 1018, 1031 (D.C. Cir. 2024) (recognizing that "our circuit has cast doubt on the proposition that 'practically obscure' material remains public"); Brewer Decl. ¶¶ 23–24.

Although the database also reflects favorable information about law enforcement officers, such as commendations, the privacy interest extents to such information as well. *Beck*, 997 F.2d

at 1494 ("A government employee has at least some privacy interest in his own employment records, an interest that extends to 'not having it known whether those records contain or do not contain' information on wrongdoing, whether that information is favorable or not.")

JMD further properly withheld secondary, indirect identifying fields—including day and month of incident, flag type detail, job series, subdivision, and agency listings for entities with fewer than 50 database entries. Brewer Decl. ¶¶ 27–28. In light of modern open-source intelligence, reverse-search technologies, and public record aggregators, disclosing precise event dates or small-agency codes enables the public  to tie database entries to public news reporting or social media, creating a mosaic effect that leads directly to officer identification. Brewer Decl. ¶¶ 27–28, 32. Courts in this Circuit routinely uphold the withholding of secondary attributes that could reasonably lead to the identification of protected individuals. *See, e.g.*, *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18–19 (D.D.C. 2013); *see also Kilmer v. United States Customs and Border Protection*, Civ. A. No.  17-1566 (CKK), 2023 U.S. Dist. LEXIS 204158, at *34-35 (D.D.C. Nov. 15, 2023) (upholding the agency's withholding of the "age, sex, and citizenship" of individuals denied entry into the United States from Canada on a particular date because that information, coupled with news reports about individuals claiming to have been denied entry over the referenced period, would allow the public to "'try to connect certain dots and make assumptions as to whether individuals in the news reports were the same people as those in the records released by CBP'").

Balanced against these substantial privacy interests, the public interest in disclosing individual officer names and secondary identifying fields is legally insubstantial. Release of uncontextualized NLEAD entries without the underlying investigative records would not facilitate public scrutiny of agency action or shed light on JMD's operations.  *Reps. Comm.*, 489 U.S. at

773; Brewer Decl. ¶ 21. Because Plaintiff has produced no evidence—let alone the "compelling evidence" required under *SafeCard*—that JMD or the reporting agencies engaged in official illegal activity, Plaintiff cannot overcome the categorical privacy protections of Exemption 7(C). *SafeCard*, 926 F.2d at 1206; *Favish*, 541 U.S. at 174.

## III. <u>JMD Satisfied the Foreseeable Harm Requirement of 5 U.S.C. § 552(a)(8)(A).</u>

Pursuant to the FOIA Improvement Act of 2016, an agency must demonstrate that it reasonably foresees that disclosure would cause harm to an interest protected by an applicable exemption. 5 U.S.C. § 552(a)(8)(A); *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018). JMD specifically evaluated the foreseeable harm that would result from disclosing individual identifying data fields and secondary attributes. Brewer Decl. ¶¶ 31–33.

JMD determined that releasing names, job series, precise event dates, or small-agency identifiers creates a real-world, reasonably foreseeable risk of targeted doxxing, harassment, identity theft, and physical or professional retaliation against current and former officers and their families. Brewer Decl. ¶ 32. Furthermore, publicly branding an officer in a federal misconduct database without providing the underlying contextual record creates a severe, irreversible risk of unwarranted public stigmatization. Brewer Decl. ¶ 33. Courts in this District have consistently held that similar explanations of reputational injury, harassment, and negative social stigma satisfy the statutory foreseeable harm requirement under the privacy exemptions. *See Ezeah v. FBI*, Civ. A. No. 24-0076 (TNM), 2025 U.S. Dist. LEXIS 158961, at *13 (D.D.C. Aug. 15, 2025); *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 U.S. Dist. LEXIS 175454, at *15–16 (D.D.C. Sept. 28, 2022).

## IV. <u>JMD Has Released All Reasonably Segregable Non-Exempt Information.</u>

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. §

552(b). Agencies are entitled to a presumption that they complied with the statutory duty to disclose segregable information. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

JMD conducted a careful, field-by-field review of the entire NLEAD dataset to ensure that all non-exempt, reasonably segregable information was released to Plaintiff. Brewer Decl. ¶ 35. JMD segregated and released all non-identifying aggregate data, statistical codes, and macro-level entry counts. Brewer Decl. ¶ 36. The withheld primary and secondary identifying fields are so inextricably intertwined with personal privacy details that no further meaningful, non-exempt information could be segregated and disclosed without revealing the very identities Exemption 6 and 7(C) protect. Brewer Decl. ¶ 36; *Juarez v. Dep't of Just.*, 518 F.3d 54, 61 (D.C. Cir. 2008).

* * *

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendant's favor.

Dated: October 16, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Samuel G. Settle*
SAMUEL G. SETTLE
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7705
samuel.settle@usdoj.gov